In the Matter of the Application of CHARLES WHANN and FRED-
ERICK S. SCHLESINGER, Appellants, for a Peremptory Writ of
Mandamus against BIRD S. COLER, as Comptroller of the City of
New York, Respondent.

*Registry of coupon bonds of Richmond Hill after its consolidation in the Greater New
York — New York city registered stock cannot be issued in place thereof.*

The holder of coupon bonds, issued by the late village of Richmond Hill, which
were valid outstanding obligations of that village when, on January 1, 1898,
it was consolidated with the city of New York by the Greater New York char-
ter (Chap. 378 of the Laws of 1897) is not entitled, under section 172 of such char-
ter, to surrender such bonds to the comptroller of the city of New York, and to
receive in exchange therefor registered stock of the city of New York; he is,
however, entitled to have such coupon bonds converted into registered bonds,
which, under the last clause of that section, is to be effected by the comptroller,
by his detaching all the coupons from the bonds and indorsing thereon the fact
of the registration with a reference to that section.

The fact that section 172 is, in the main, a re-enactment of section 138 of the
Consolidation Act (Laws of 1882, chap. 410) and of section 1 of chapter 199 of
the Laws of 1880, under which no right existed to surrender the bonds referred
to therein and to obtain therefor original city stock, and that in enacting sec-
tion 172 the Legislature inserted the provision, not contained in the original act,
that the comptroller shall "issue" registered stock or bonds in place of the
coupon bonds, does not evince an intent on the part of the Legislature to confer
any additional rights on the holders of such coupon bonds, such as exemption
from taxation except for State purposes, conferred on the bonds of the city of
New York, or to deprive the city of New York of the right to contest the
validity of the coupon bonds, should they be found to be invalid.

APPEAL by the petitioners, Charles Whann and another, from an
order of the Supreme Court, made at the New York Special Term
and entered in the office of the clerk of the county of New York
on the 20th day of February, 1899, denying their motion for a per-
emptory writ of mandamus directed to Bird S. Coler, as comptroller
of the city of New York, commanding him to issue to the petitioners.
registered stock of the city of New York in exchange for bonds
issued by the late village of Richmond Hill.

*J. H. Caldwell*, for the appellants.

*George L Sterling*, for the respondent.

Order affirmed, with costs, on the opinion of SCOTT, J., in the
court below.

FIRST DEPARTMENT, MARCH TERM, 1899.  [Vol. 38.

Present — VAN BRUNT, P. J., BARRETT, RUMSEY, O'BRIEN and INGRAHAM, JJ.

The following is the opinion of SCOTT, J., in the court below:

SCOTT, J.:

The petitioners are the owners of $35,000 of coupon bonds issued by the late village of Richmond Hill, in the county of Queens, one of the. municipalities which has now become incorporated into the city of New York. .No question is made in this motion as to their validity. They were issued prior to January 1, 1898 (the date of consolidation), and were on that day, as is assumed, valid outstanding obligations of said village. The applicants have demanded of the comptroller that he accept a surrender of these bonds, and in place thereof issue to them registered stock of the city of New York, in the manner and form that said bonds would have been if originally issued as registered bonds. The comptroller has refused to comply with this demand, but offers to pursue the same course respecting these bonds which he pursues respecting other similar bonds, which is to receive them and cut off the coupons, then to register the bonds and indorse thereon the fact of such registration, and return or reissue them to the owners. This course is. not satisfactory to the applicants, who insist that they are entitled to surrender their bonds for cancellation, and to receive in return, not the same bonds with a certificate of registration indorsed thereon, but original corporate stock of the city of New York, of like terms as to amount, rate of interest and time of payment as the bonds so surrendered and canceled. The city of New York, as at present constituted, was formed by the consolidation of a great number of large and small municipalities, each one of which had issued bonds which, at the date upon which consolidation became effective, were outstanding obligations. The section of the charter of Greater New York (Laws of 1897, chap. 378) under which this application is made reads as follows:

"§ 172. All stocks and bonds heretofore lawfully issued by any of the municipal or public corporations or parts thereof which have heretofore been annexed to or consolidated with the corporation known as the mayor, aldermen and commonalty of the city of New York, or which by this act are made part of the corpora-

tion of the City of New York as hereby constituted, including the counties of Kings and Richmond, for the payment of the principal and interest of which the City of New York is liable, may be registered and must be recorded by the owners thereof in the comptroller's office in said city, and shall be transferable at the pleasure of the holder, either in person or by attorney, only upon the books of the corporation in said office, and subject to such reasonable rules and regulations as the comptroller may prescribe, such registry and transfer to be indorsed thereon by the comptroller. Whenever such stocks or bonds have been issued in coupon form, and whenever hereafter corporate stock of the City of New York may be so issued, it shall be the privilege of the holders thereof at any time, subject to such rules and regulations, to convert the same into registered stock or bonds, and the comptroller is hereby authorized to issue registered stock or bonds therefor in the manner and form in which the same would have been conditioned if originally issued in registered form. The interest on all such stocks and bonds when so registered shall, as the same becomes due and payable, be paid in like manner as upon other registered stocks and bonds of the City of New York; and, whenever any such stocks or bonds have coupons attached, the comptroller shall, upon registration thereof, have authority to detach all coupons therefrom, and shall thereupon indorse the fact of such registration, with a reference to this section."

It is apparent that this section was designed to provide for two sets of conditions which might arise in the future. *First*, the owners of coupon bonds or stock which " have been issued " — *i. e.,* issued prior to January 1, 1898 — might wish to have them converted into registered stock or bonds, and, *secondly,* the owners of corporate stock of the city of New York which " may be hereafter " — *i. e.,* after January 1, 1898 — so issued, might wish to have them so converted, and it is obvious that the Legislature has attempted to provide for both of these cases in a single section. In the main the section is a re-enactment of section 138 of the Consolidation Act (Laws of 1882, chap. 410), which in turn was a re-enactment of section 1 of chapter 199 of the Laws of 1880, which was an act providing for the registration of the bonds of the towns of Morrisania and West Farms which had been issued before these towns

had been annexed to the mayor, aldermen and commonalty of the city of New York. It has never been contended that under the statute the holders of West Farms and Morrisania bonds had the right to surrender them, and insist upon the issue of original city stock. The applicants insist, however, that the provision inserted in the act of 1897, that the comptroller shall " issue " registered stock or bonds in place of the coupon stock or bonds, which words were not contained in the act of 1880, confers a new right upon the holders of coupon bonds. It would be a narrow construction of the section which would give to this single provision the controlling effect which is sought to be attached to it. As has been said, the section provides for two possible contingencies, and such effect should be given to it as will meet both cases. In the case of the conversion of corporate stock issued after January 1, 1898, the comptroller might, without affecting the relations between the city and its creditor, cancel the coupon stock and issue new registered stock. To cancel stock or bonds issued prior to January 1, 1898, and issue new corporate stock, might, however, very seriously affect the relations between the city and the bondholder. Section 169 of the Greater New York charter provides that all bonds or corporate stock issued by the city of New York after January 1, 1898, shall be exempt from all taxation except for State purposes. No such general exemption attaches to the bonds issued prior to January 1, 1898, by the numerous municipalities which on that date became merged into the city of New York. Just how many of such bonds are outstanding does not appear by the motion papers, but it is a matter of common knowledge that there are a very large number of them, and it was stated on the argument that they amounted to some millions of dollars. Whatever the amount, nothing but the plainest language would justify the improbable conclusion that the Legislature intended, as a result of consolidation, to confer upon the holders of these bonds the gift of perpetual exemption from local taxation, an advantage which was not in contemplation when the bonds were issued.

It is also to be considered that the Greater New York charter imposes upon the city of New York only the obligation to pay those bonds of the constituent municipalities which had been lawfully issued. If such bonds are surrendered and canceled, and

new corporate stock be issued in exchange therefor, the city would be deprived of any opportunity to contest the validity of such bonds, if reason for doing so should hereafter be discovered. Of course, the probability of such a discovery is slight, but it cannot be said to be non-existent. It is stated in the moving papers that an investigation into the validity of these particular bonds had been made under direction of the corporation counsel, and that he has advised the comptroller that from such investigation it appears that the bonds are valid. I do not understand this to have been a judicial investigation, and, while it is sufficient to justify the comptroller in recording the bonds and paying interest thereon, I know of no principle upon which it can be held to estop the city from setting up any legal defense if, in the future, such a defense should be found to exist. It will be seen that the cancellation of these bonds and the issue of new corporate stock in their place would involve consequences which it is not to be presumed the Legislature intended, and the letter of the section referred to does not demand such a construction. The privilege accorded to the owners of such stock is to "convert" their coupon bonds into registered bonds. There is not a single word in the section as to "exchanging" coupon for registered bonds, or as to "surrendering" such bonds, or as to the duty of the comptroller to "cancel" them. They may be "converted," and the method of their conversion is prescribed in the last clause of the section. The comptroller is authorized to "detach all coupons therefrom, and (he) shall thereupon indorse the fact of such registration with a reference to this section." It is this act of cutting off the coupons and indorsing the fact of registration upon the bonds which "converts" them from coupon to registered bonds, and, if it be necessary to give effect to every word in the section, it would do no violence to the language to say that when he had thus transformed the bonds and re-delivered them to the owner he had "issued" registered bonds for the coupon bonds which had been presented to him. The manifest intention of the section was not the exchange of one bond or security for another, but merely a change in the method of paying principal and interest on the same bond. Simply the transformation of the same bond from coupon to registered form. The motion for a mandamus is denied, with ten dollars costs.